## Case No. 6,256.

### Ex parte HAYDEN.

[3 App. Com'r Pat. 354.]

Circuit Court, District of Columbia. Aug. 8, 1860.

PATENTS—FAILURE TO STATE CLAIM WITH PARTICULARITY—DELAY IN MAKING AMENDMENT—PATENT FOR EACH IMPROVEMENT TO A MACHINE — IMPROVEMENT IN CLEANING COTTON.

[1. The failure of a prior application to state the claim with sufficient particularity to show novelty, while an excuse for its rejection, will not show a change in the patentable features of the invention when it appears that the precise form and arrangement of parts without addition or subtraction are in the machine described in the amended specifications.]

[Cited in Hussey v. Bradley, Case No. 6,946.]

[2. Where the patent office has received an amended specification, and acted upon the merit of the case, a delay of three years in making the amendment is no ground for its rejection, especially where the prior application was better suited to cover the patentable features of the machine.]

[3. An inventor may make each improvement to a machine the subject of a separate patent.]

[4. Hayden's claim of an improvement in cleaning cotton, consisting of a trunk divided horizontally with a screen of woven wire, with cells or compartments under such screen to catch the dirt, and so small as to break the current of air under the screen when the cotton is blown through such trunk over the screen, is not anticipated by Smith's invention, in which both the cotton and dirt are carried through the trunk, and winnowed in a chimney with a wire screen at the top.]

[Appeal by Isaac Hayden from the decision of the commissioner of patents denying a patent to him for an improvement in cleaning cotton.]

MERRICK, Circuit Judge. The law of patents contemplates that the utmost tenderness is to be shown to the mistakes and inadvertencies of inventors in the preparation of their claims and in the obtaining of their patents, it being well understood that their minds are engrossed with the valuable ideas which have agitated them, and that they are therefore much more apt to fail in full and exact explanation of them than those who, carefully trained to deal with the thoughts of others, have learned the art of perspicuous description. Hence the commissioner of patents is charged with the duty of notifying an applicant whenever his specifications are defective and insufficient, and is required to give him briefly such information as may be useful in judging of the propriety of reforming his claim and specification. And after a patent shall have been granted, and it shall prove inoperative and invalid by reason of a defective or insufficient description or specification, and the error has arisen by inadvertency, accident or mistake, the party is at liberty to surrender the patent, and have it reformed so as to protect him to the full extent of his actual discoveries. And so far has the supreme court carried its benign construction of the law as to allow a party to claim upon a reissue that which in his original application he had disclaimed. Reading the original and amended specifications in the spirit of those liberal and just provisions which utterly repudiate the idea that the public shall take any advantage of the ignorance or inadvertence of its benefactors, I am constrained to differ from the office as to the construction which it has placed upon the original and amended specifications in the present case and to hold that every material feature in the reformed claim is abundantly indicated by the original description and fully justifies the applicant in the changes he has made for the purposes of technical accuracy and distinctness. It appears to me impossible to read the first five lines of the second page of the original (to wit: "The fine sand which is removed by my apparatus has heretofore been retained in the cotton, and even carried into the spinning apparatus. The cotton, after being passed through a beater or opener, has heretofore been conducted on an endless apron directly to the lapping cylinder," and the three first lines of the third page, to wit: "The cotton to be cleaned is taken from the beater or opener and passed through the entire length of the trunk (a, a) by means of a current of air blown through the same"), without perceiving that the applicant contemplated using his peculiarly arranged trunk in connection or combination with the well known beaters, pickers or openers of the cotton mill. So with regard to the arrangement of the wire screen, the dimensions and construction of its meshes, and the small compartments into which the space of the trunk beneath was to be divided, and the object and purposes of those subdivisions, were also shown, viz.: they were to be sufficiently narrow to break the current of air underneath, with the exception that he did not define by measurement, as in the amendment, the size of these compartments; that he may not have understood as fully as to present the extent or amount of the advantages which were to flow from this arrangement of parts, and therefore not have expressed them so fully as he now does, might be some excuse for the total rejection of his claim as first presented, but surely these facts do not amount to any change of the patentable features of his invention when it is apparent that the precise form and arrangement of parts without addition or subtraction are in the machine now which were described in the specification of 1854.

Neither do I consider it a valid objection to the claim, under all the circumstances of this case, that there has been a delay of three or more years in making the amendment, inasmuch as the office has received the amendment and acted upon the merits of the case, and it may well be questioned whether the form in which the first claim of the original specification was presented was not better suited to cover certain patentable features of his case than the form he has chosen in the amended application, for in that he very distinctly claims as points of novelty the arrangement within the trunk, itself admitted to be old, of the wire net work in combination with the small compartments for cutting off the current of air from the trash and dust while it was unobstructed in its winnowing force upon the cotton itself, while the language of the present claim might leave the inference that the point of novelty rested alone in the definite combination of that trunk, so constructed with the beater or picker, and did not cover also the novel combination of the parts of the trunk. Judge Grier, in the circuit court of Pennsylvania, in the case of Rich v. Lippincott [Case No. 11,758], and Judge Nelson, on the New York circuit, in Gaylor v. Wilder [10 How. (51 U. S.) 477], both held that where a party by a mistaken rejection of his claim had been induced to withdraw his application and get a return of $20, as the law provides, and acting purely under his mistake of his rights occasioned by the error of the office, suffered his invention to go into public use for several years, and afterwards, upon discovering his mistake, applied for and obtained a patent, he had not by the withdrawal under such circumstances abandoned his right; but that his second application related back by operation of law to the date of his first application, so as to cut away the forfeiture which otherwise would have happened by the long intermediate public use.

In this case there having been no withdrawal the party may well be pardoned his delay for the reasons I have suggested. But the office has further insisted that the present application cannot be granted because the claim is anticipated by the patent of December 1st, 1857, for the same invention. It is true that the applicant has in both specifications described the same machinery and combination of parts. It is further true that the matter patented in December, 1857, was embraced substantially in his original application of December 11th, 1854, for his third claim there was for "lacquering or varnishing the webbing as set forth;" and the claim of the patent of 1857 is "for covering the partitions of an elongated trunk or box for cleaning cotton and other fibrous substances with woven wire having the scores formed by the weft crossing the warp of said wire screen filled with metal or cement, the whole combined in the manner and for the purposes set forth." It is obvious upon reading the whole specification and the claim as summed up in that case that the patent is there limited to the bath of metal or cement with which the wire screen is treated so as to prevent the particles from catching and clogging the wires at their points of crossing. By the grant of that patent the party obtained what he had a right to—protection for that distinct feature of novelty without imperiling it by union with others of doubtful character. It is the privilege of the party to unite as many improvements in one patent as he pleases, but the right to make each improvement the subject of a separate patent has never been denied, and whenever the features of novelty are numerous, prudence will suggest that the danger of making a patent too broad by uniting questionable with plainly novel claims be avoided by taking separate patents. But the claim of the present application does not touch the point of novelty covered by the patent of December, 1857, for the third claim of the original specification above quoted was cancelled in June, 1855, and the claim of the application now pending is limited by the following words: "What I claim in a trunk for cleaning cotton and other substances is dividing it horizontally or centrally with a screen of woven wire or twine with cells or compartments under said screen so small as to prevent or break the current of air under said screen, substantially as described, in combination with a machine substantially such as is described in this specification for opening the cotton and blowing it through said trunk over the screen substantially as described."

Besides the objections already noticed the office has relied upon the patented cotton cleaner of Waterman Smith of January 3rd, 1854, for an anticipation of the present claim. The leading ideas and arrangement of operative parts in the two machines are so essentially different that I am unable to discover any similarity between these contrivances.

In Smith's patent there is a trunk provided with a screen along which the cotton passes from the picker; but here the resemblance ceases, for the design and arrangement of Smith's is for the purpose of conveying the cotton and the dust all together through the whole extent of the trunk and to discharge them confusedly into a chamber against a chimney provided with a wire screen, the cotton to be whirled about the chamber and the fine dust to pass up the chimney and escape out in the open air, whereas the design of Hayden's contrivance is to maintain the current of air upon the light cotton in the upper half of the trunk and to provide ever-recurring small receptacles along the course of the trunk into which the dust and small particles may be precipitated by the force of gravity, and there remain protected by the sides of these receptacles from the current of air above, which would, if admitted to them, cause them to rise and mingle again with the cotton, thereby undoing at the remote end of the trunk the beneficial work effected at an interior portion thereof. Smith's contrivance leaves the cotton as full of dust when it leaves the trunk as when it entered, more loosely and widely distributed in the mass perhaps; but Hayden's invention contemplates that the trunk itself shall operate a final divorce between the good and the bad, and that every particle once separated shall be forever isolated from the good fibre which leaves the mouth of the trunk freed of its offensive companions.

The other references which were given by the office in its letter of rejection of January 22, 1855, seem to be directed mainly to the third claim of the original specification, which is not now in issue so far as they have any bearing at all upon the case, and therefore do not need any extended notice. The reference to Use's Dictionary at page 508 shows merely a trunk provided with a grating of cross bars, but no screen of wire work and no series of small receptacles beneath the grating, as in this case, and is therefore no answer to the present combination.

It may be further observed that the several affidavits of practical men filed in the case show the great utility of the applicant's contrivances in the manufacture of cotton, and that he has made by his ingenuity valuable additions to the stock of human knowledge. And now being of opinion that there is error in each and every of the objections urged by the office against the present application, and that these objections have been duly presented for revision by the reasons of appeal, I do hereby certify to the Hon. Philip F. Thomas, commissioner of patents, that having assigned the first of August for hearing said appeal, I have fully considered the decision of the office, the reasons of appeal, and the response of the office to those reasons, and finding said decision erroneous, upon the several points herein at large set

forth, I reverse said decision and hereby adjudge and direct a patent to issue to the applicant upon his amended specification as prayed.

[See Case No. 6,260.]